Filed 9/7/23  P. v. Wright CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ERIC LEE WRIGHT,<br><br>    Defendant and Appellant. | B319807<br><br>(Los Angeles County<br>Super. Ct. No. BA237500) |

APPEAL from an order of the Superior Court of Los Angeles County.  Craig J. Mitchell, Judge.  Affirmed.

Marilee Marshall, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan S. Pithey, Assistant Attorney General, David E. Madeo and Rene Judkiewicz, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Appellant Eric Lee Wright appeals from the superior court's order denying his petition for resentencing at the prima facie stage of the proceedings under Penal Code section 1172.6[1] as to his first degree murder conviction. We affirm because the record of conviction shows the jury could convict Appellant as a direct aider and abettor of first degree murder only if it found Appellant had intent to kill.

## BACKGROUND

### I. Factual and procedural background

In 2002, Appellant and two other codefendants who were all members of the Blood Swans Gang drove into an area claimed by a rival gang. Appellant was driving his car when Appellant's passengers exited the vehicle and ran after pedestrian Michael Mayberry and shot at him. Appellant and his codefendants then left the scene in Appellant's car. Mayberry later died from 13 gunshot wounds.

In 2005, the Los Angeles County District Attorney's Office charged Appellant with murder (§ 187, subd. (a)), with the allegations that the murder was gang-related (§ 186.22, subd. (b)(1)), and that a principal personally and intentionally discharged a firearm that proximately caused great bodily injury or death (§ 12022.53, subds. (d) & (e)(1)).

Following a jury trial, the jury was provided with instructions defining the elements of murder, the difference between first and second degree murder, as well as the definition of aiding and abetting. The jury was not provided with

---

[1] All statutory citations are to the Penal Code unless noted otherwise.

instructions on the natural and probable consequences or felony murder theories.

In closing argument, the prosecutor explained the law of aiding and abetting. "Here is an example, let's say you agree or someone agrees to go along for a beer run. . . . A beer run like kids typically or young adults anyone go into a liquor store and take a few cans of beer and run let's say we're going on a beer run and I'm going to be the driver and someone else is actually going to be inside and get [*sic*] the beer. . . . I agree to be the driver. And this is the law of aiding and abetting. See, Eric Wright, ladies and gentlemen, according to the evidence, drove the van upon seeing Michael . . . Eric Wright, initially made a U-turn. Eric Wright stopped the van, stood inside the van, while the rest of the gang went out and killed Michael. . . . but he never shot Michael Mayberry and the People want to be clear that he was not the shooter, but yet we charge him with murder. And that's the law of aiding and abetting."

"You may disagree with it, but the law says, in the example of the beer run, if I just drive someone and that person gets out to go get us a couple of cans of beer and let's say . . . the cashier confronts them . . . and they get in a fight. And let's say my friend hits the cashier and the man falls backs, hits [his head] on something and bleeds to death, possible murder. If I'm caught, I'm charged with murder also over $2.00 of beer even though I stayed in the car, never saw, never did anything inside, never got out. If I'm caught I could be charged with murder and could be convicted of murder based on that."

The prosecutor then stated, "your duty is to decide whether Eric Wright who is on trial here has committed the crimes charged through aiding and abetting. . . . let me make clear, [it] is

entirely on the people of the state, whom I represent, to prove to you each one of the elements of the murder. If we have not proved the element of murder, it could be a not guilty or it could be a lesser included crime."

"We have charged Eric Wright with first degree murder which we have to show it is murder with malice aforethought . . . . We have to show that the defendant committed an act or aided and abetted an act that caused the death of another person, Michael Mayberry, and when the defendant acted he had a state of mind called malice aforethought." The prosecutor then defined express malice as intention to kill. "The purpose here is very clear. They were there not to scare someone . . . they were there to kill." The prosecutor explained that implied malice is intentionally committing an act knowing the natural consequences are dangerous to human life. The prosecutor then emphasized that this case was a first degree murder case.

The jury convicted Appellant of first degree murder and found true the gang and firearm allegations. Appellant was sentenced to 25 years to life. Appellant appealed his conviction and sentence in case No. B198634. We ordered the trial court to strike the weapons possession restriction from the abstract of judgment. We affirmed both the sentence and conviction in all other respects. (*People v. Wright* (October 27, 2008, B198634) [nonpub. opn.].)

On July 17, 2019, Appellant filed a petition for resentencing under section 1172.6. Appellant was appointed counsel from the Alternate Public Defender. The trial court denied the petition because it ruled that Appellant had not made a prima facie showing that he was eligible for relief given that

the jury was not instructed on any felony murder or natural and probable consequences theory.

Appellant timely appealed.

## II.    Respondent's request for judicial notice

Respondent requests that we take judicial notice of our own record in Appellant's direct appeal in *People v. Wright*, *supra*, B198634.  Appellant does not oppose the request.  We grant the request and take judicial notice of case No. B198634 and the record on appeal because they are records of a court of this state.  (See Evid. Code, § 459; Cal. Rules of Court, rule 8.252(a).)  The record of conviction contained in the record of appeal in case No. B198634 is relevant in determining whether Appellant has demonstrated a prima facie case for resentencing relief.  (*People v. Lewis* (2021) 11 Cal.5th 952, 971 (*Lewis*).)  Accordingly, we grant the request for judicial notice.

## DISCUSSION

## I.    Applicable legal background

The California Legislature enacted Senate Bill 1437 (2017–2018 Reg. Sess.) to " 'amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' (Stats. 2018, ch. 1015, § 1, subd. (f).)" (*People v. Martinez* (2019) 31 Cal.App.5th 719, 723.)  Senate Bill 1437 did this by amending section 188, which defines malice, and section 189, which defines the degrees of murder.  (Stats. 2018, ch. 1015, §§ 2, 3.)  Amended section 188 states:  "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder,

5

a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (*Id.*, subd. (a)(3).) Amended section 189 states: "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] [or] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (*Id.*, subd. (e).)

Senate Bill 1437 also established resentencing relief for eligible defendants. (§ 1172.6, subd. (a), former § 1170.95; *People v. Strong* (2022) 13 Cal.5th 698, 707–708 (*Strong*).) Under section 1172.6, subdivision (a), "[a] person convicted of felony murder or murder under the natural and probable consequences doctrine . . . may file a petition" with the sentencing court to have his or her murder conviction vacated and to be resentenced on any remaining counts "when all of the following conditions apply: [¶] (1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine . . . . [¶] (2) The petitioner was convicted of murder, attempted murder . . . following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder. [¶] (3) The petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective

6

January 1, 2019" under Senate Bill 1437. (§ 1172.6, subd. (a).) After receiving a petition containing the required information, "the court must evaluate the petition 'to determine whether the petitioner has made a prima facie case for relief.' " (*Strong*, at p. 708 [citing § 1172.6, subd. (c)].) If the defendant makes a prima facie showing for relief, the court must issue an order to show cause and hold an evidentiary hearing. (§ 1172.6, subds. (c), (d)(3).)

In ascertaining whether a defendant has made a prima facie case for relief, the trial court may look at the record of conviction, which will necessarily inform its "prima facie inquiry under section [1172.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis, supra,* 11 Cal.5th at p. 971.) A defendant is ineligible for relief as a matter of law where the record conclusively shows that the jury actually relied upon a theory of liability that is unaffected by section 1172.6, i.e., that a defendant was the actual killer or directly aided and abetted the killing. (§ 1172.6, subd. (a)(3); see also *People v. Nguyen* (2020) 53 Cal.App.5th 1154, 1157, 1167–1168 [petitioner not entitled to relief where he was convicted as direct aider and abettor].) As part of the record of conviction, the trial court may consider the prior appellate opinion, jury instructions, verdict forms, and any special findings or enhancement allegations the jury found true to determine if the petition makes a prima facie showing of entitlement to relief. (*Lewis,* at p. 957; *People v. Soto* (2020) 51 Cal.App.5th 1043, 1055 [the trial court may "rely on the jury instructions, which are part of the record of conviction, in assessing the prima facie showings"], overruled on another ground by *Lewis,* at p. 957.) Courts have also considered counsel's arguments at the prima

7

facie stage.  (See, e.g., *People v. Cortes* (2022) 75 Cal.App.5th 198, 200 (*Cortes*).)

We review de novo whether the trial court conducted a proper inquiry under section 1172.6, subdivision (c).  (*People v. Harrison* (2021) 73 Cal.App.5th 429, 437.)

## II.   The superior court did not err in denying Appellant's resentencing petition

Appellant contends that the superior court erred in denying his resentencing petition.  As discussed further below, Appellant is ineligible for resentencing relief as a matter of law because the record of conviction shows that the jury was required to find Appellant had intent to kill, if it found Appellant guilty for first degree murder as a direct aider and abettor.

The record shows that the court instructed the jury on the charged crime of murder under CALCRIM No. 520.  The instruction provided that to convict Appellant of murder, the People must prove that Appellant "committed an act that caused the death of another person" and when Appellant acted, he had a state of mind called malice aforethought.  The instructions then stated that there are two kinds of malice:  express malice or implied malice.  Appellant had "express malice if he unlawfully intended to kill" and implied malice if he "intentionally committed an act"; "[t]he natural consequences of the act were dangerous to human life"; "[a]t the time he acted, he knew his act was dangerous to human life"; and "[h]e deliberately acted with conscious disregard for human life."

The trial court also provided the jury with CALCRIM No. 521 which explained the difference between first and second degree murders.  For first degree murder, the prosecution was required to prove that Appellant "acted willfully, deliberately,

8

and with premeditation."  Appellant "acted willfully if he intended to kill."  "All other murders are of the second degree."

The instructions provided that Appellant may be convicted as either a direct perpetrator or someone who aided and abetted the perpetrator under CALCRIM Nos. 400 and 401.  For Appellant to be guilty of aiding and abetting, the People must prove that the perpetrator committed the crime; Appellant knew the perpetrator intended to commit the crime; before or during the commission of the crime, Appellant intended to aid and abet the perpetrator in committing the crime; and Appellant's word or conduct did in fact aid and abet the perpetrator's commission of the crime.  The only crime charged in this case was murder.

Appellant concedes that the jury was not instructed on a natural and probable consequences or felony-murder theory.  Appellant instead argues that even though the target crime of murder was specified, the instructions which allowed for guilt based on implied malice in combination with the prosecutor's arguments allowed the jury to impute malice onto Appellant because he was not the actual killer.  Appellant argues that the prosecutor stated that the only finding the jury had to make to convict Appellant guilty of murder was to conclude that he was the driver of the van.  Appellant also argues that the prosecutor conflated the concepts of aiding and abetting a crime with the natural and probable consequences theory by using an example of a beer run.  "You may disagree [*sic*] but the law says, in the example of the beer run, if I just drive someone and that person gets out to go get us a couple of cans of beer and . . . the cashier confronts them, [here], you have to pay for the beer and they get in a fight.  And let's say my friend hits the cashier and the man falls back, hits [his head] on something and bleeds to death,

9

possible murder. If I'm caught, I'm charged with murder also over $2.00 of beer even though I stayed in the car."

However, the prosecutor later emphasized that the jury must decide whether Appellant committed the crime of first degree murder through aiding and abetting as instructed. The prosecutor then stated that it's the People's burden "to prove to you each one of the elements of the murder." The prosecutor went on to say that the People charged Appellant with first degree murder with malice aforethought, and they therefore must show that Appellant aided and abetted an act that caused the death of another person and that Appellant acted with malice aforethought. The prosecutor then defined express malice as requiring an intention to kill.

As to Appellant's contention regarding the beer run example, we presume a jury understands and follows the court's instructions, and " 'treat[s] the court's instructions as a statement of the law by a judge, and the prosecutor's comments as words spoken by an advocate.' " (*People v. Cortez* (2016) 63 Cal.4th 101, 131.) Here, the trial court instructed the jury that counsel's arguments were not evidence, and that the jury was required to follow the court's instructions if counsel's arguments conflicted in any way with the jury instructions.

Alleviating any risk of confusion, the prosecutor's discussion of the People's burden to prove malice in conjunction with the jury instructions demonstrate that the jury could have convicted Appellant of first degree murder, only if the People had proven beyond a reasonable doubt that he acted with the intent to kill, i.e., express malice. (*People v. Coley* (2022) 77 Cal.App.5th 539, 547 ["[a]n intent to kill is the equivalent of express malice"].) This finding was required regardless of whether the jury

10

ultimately concluded Appellant was the actual killer or a direct aider and abettor. (See *People v. Estrada* (2022) 77 Cal.App.5th 941, 943 (*Estrada*) [a petitioner convicted of first degree murder as a "classic" aider and abettor is ineligible for resentencing relief as a matter of law; instructing the jury with CALCRIM Nos. 400 and 401 does not render the petitioner eligible for relief].) Accordingly, "[t]here is no indication in the record to suggest that the jury did not, in fact, follow the court's instructions." (*Cortes*, *supra*, 75 Cal.App.5th at p. 206.)

Appellant relies on *People v. Langi* (2022) 73 Cal.App.5th 972 (*Langi*) and *People v. Maldonado* (2023) 87 Cal.App.5th 1257 (*Maldonado*) to contend that based on the aiding and abetting and implied malice instruction given, the jury was permitted to find him guilty of murder by imputing malice to him based on the actions of the actual shooter. *Langi* and *Maldonado* are inapposite because those cases contained jury instructions that did not require finding that the defendant intended to kill. (*Coley*, *supra*, 77 Cal.App.5th at p. 547; see *Langi*, at pp. 982–983 [jury instructions on aiding and abetting an implied malice second degree murder created ambiguity that did not require finding of intent to kill or conscious disregard of risk]; *Maldonado*, at p. 1259 [jury instructions on aiding and abetting an implied malice lying-in-wait murder, which does not require an intent to kill, allowed the jury to impute malice to the defendant based solely on his participation in a crime].)

The jury instructions the trial court provided and the verdicts rendered demonstrate that the jury found the People had proven beyond a reasonable doubt that Appellant acted with express malice even if he was not the actual killer. The jury was instructed that to find Appellant guilty as a direct aider and

11

abettor of first degree murder, it was required to find Appellant knew the perpetrator intended to commit the charged crime, i.e., murder, he intended to aid and abet the perpetrator in committing the murder, and he did by word or conduct aid the perpetrator in the murder. (See *People v. Williams* (2022) 86 Cal.App.5th 1244, 1256.) The jury instructions foreclosed the jury from potentially convicting Appellant of first degree murder based upon a direct perpetrator's intent to commit a nonhomicide offense, and solely upon Appellant's participation in such an act. There were no other instructions which would have permitted the jury to convict Appellant of first degree murder by imputing malice to him. By finding Appellant guilty of first degree murder, the jury necessarily determined Appellant acted with the intent to kill. Accordingly, because Appellant was "convicted of first degree murder as an aider and abettor with intent to kill, [Appellant] is . . . ineligible for resentencing" as a matter of law. (*Estrada, supra*, 77 Cal.App.5th at p. 945; *Lewis, supra*, 11 Cal.5th at p. 971.)

## DISPOSITION

The trial court's order denying Appellant's section 1172.6 petition at the prima facie stage is affirmed.


VIRAMONTES, J.

WE CONCUR:


GRIMES, Acting P. J.


WILEY, J.

12